[Cite as *Thomas v. Progressive Cas. Ins. Co., Inc.*, 2011-Ohio-6712.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

CHARLOTTE THOMAS                    :

    Plaintiff-Appellant          :    C.A. CASE NO. 24519

vs.                                 :    T.C. CASE NO. 10CV6955

PROGRESSIVE CASUALTY INSURANCE :    (Civil Appeal from
COMPANY, INC.                             Common Pleas Court)
    Defendant-Appellee           :

. . . . . . . . .

O P I N I O N

Rendered on the 23rd day of December, 2011.

. . . . . . . . .

Richard Hempfling, Atty. Reg. No. 0029986, 15 West Fourth Street, Suite 100, Dayton, OH 45402
    Attorney for Plaintiff-Appellant

Timothy L. Zix, Atty. Reg. No. 0055479; Jennifer Hann Harrison, Atty. Reg. No. 0065819; Timothy G. Pepper, Atty. Reg. No. 0071076, 40 North Main Street, Suite 1700, Dayton, OH 45423
    Attorneys for Defendant-Appellee

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Plaintiff, Charlotte Thomas, appeals from a final order of the court of common pleas granting a motion filed pursuant to Civ.R. 12(B)(6) by Defendant, Progressive Casualty Insurance Company, Inc. ("Progressive"), and dismissing an action Thomas

filed on three claims for personal injuries, for failure to state a claim upon which relief may be granted.

{¶ 2}  Thomas was employed by Progressive as a claims adjuster. On September 13, 2007, Progressive sent Thomas to a location in Springfield, Ohio to evaluate damages to a vehicle.  While Thomas was there, two pit bulls ran toward her in an aggressive manner. One of the dogs turned back before reaching Thomas.  The other made contact of some sort with her, but caused Thomas no physical harm.

{¶ 3}  In a complaint she filed on August 31, 2010, Thomas alleged that her encounter with the two pit bulls caused her severe emotional and psychological distress, and that she was subsequently diagnosed with post-traumatic stress disorder ("PTSD").  As a result, Thomas's normal life activities "were overwhelming to her." Complaint, ¶39.  Thomas stated that she requires assistance "to care for herself and tend to her basic needs."  ¶40.

{¶ 4}  Thomas was unable to work as a result of her PTSD.  She received disability benefits from Progressive.  After those benefits were exhausted, Thomas applied for but was denied worker's compensation benefits because her psychiatric condition did not arise from a physical injury Thomas had suffered.  See R.C. 4123.01(C)(1).

{¶ 5}  The complaint Thomas filed pled three claims for relief:

intentional infliction of emotional distress; negligent infliction of emotion distress; and, negligence. Thomas's theory in each instance was that Progressive breached a common law duty of care it owed Thomas by failing to equip its claims adjusters, such as Thomas, with protective training, equipment, and strategies on how to deal with aggressive animals they encounter in the course of their work.

{¶ 6} Progressive filed a Civ.R. 12(B)(6) motion to dismiss the action Thomas filed. The trial court granted the motion. Thomas filed a notice of appeal from that final order.

## ASSIGNMENT OF ERROR

{¶ 7} "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION TO DISMISS."

{¶ 8} The function of a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted is to test the legal sufficiency of a claim, generally contained in the complaint. *Ziegler v. Bove* (Dec. 23, 1998), Richland App. No. 98CA65. The defense of failure to state a claim on which relief may be granted asserts that the pleader has failed to plead the operative legal grounds relating to a claim. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190. A. Civ.R. 12(B)motion cannot be used to raise any of the Civ.R. 8(C) affirmative defenses. *State ex rel. Freeman v. Morris* (1991), 62 Ohio St.3d 107.

{¶ 9}  A trial court should only dismiss a complaint for failure to state a claim on which relief can be granted pursuant to Civ.R. 12(B)(6) when it appears "beyond doubt . . . that the plaintiff can prove no set of facts warranting relief."  *State ex rel. Crabtree v. Franklin County Board of Health*, 77 Ohio St.3d 247, 1997-Ohio-274, ¶2.  The court may look only to the complaint itself, and no evidence or allegation outside the complaint, when ruling on a Civ.R. 12(B)(6) motion.  *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 1997-Ohio-169.  Nevertheless, the court may consider material incorporated in the complaint as part of the complaint.  *State ex rel. Crabtree; State ex rel. Keller v. Cox*, 85 Ohio St.3d 279, 1999-Ohio-264.  Even so, because Ohio has rejected "fact pleading" in favor of "notice pleading," a plaintiff is not required to prove his or her case through the pleadings in the complaint, since the plaintiff's lack of access to relevant evidence at that stage of the proceedings would allow dismissal of many valid claims.  *York v. Ohio State Highway Patrol* (1991), 60 Ohio St.3d 143.

{¶ 10} When a trial court construes a complaint for purposes of a motion to dismiss for failure to state a claim, the court must assume that "all factual allegations in the complaint are true."  *Tulloh v. Goodyear Atomic Corp.* (1992), 62 Ohio St.3d 541, 544.  The court is also required to construe all reasonable

inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* "Since all factual allegations in the complaint are presumed true, only legal issues are presented and an entry of dismissal will be reviewed <u>de novo</u>." *Hunt v. Marksman Products* (1995), 101 Ohio App.3d 760, 762.

<u>Intentional Infliction of Emotional Distress</u>

{¶ 11} "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, Syllabus.

{¶ 12} "In order to recover damages for the intentional infliction of serious emotional distress four elements must be proved: a) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; b) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; c) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and d) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it."

{¶ 13} *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, paragraph two of the syllabus.

{¶ 14} We adopted the *Pyle* test in *Hale v. City of Dayton*, Montgomery App. No. 18800, 2002-Ohio-542, adding the following quote from *Yeager*, at ¶12:

{¶ 15} "* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

{¶ 16} In granting Progressive's motion to dismiss Thomas's claim for intentional infliction of emotional distress, the trial court wrote:

{¶ 17} "In her Complaint, Plaintiff alleges that Defendants failed to provide education regarding aggressive animals, failed to provide claims adjusters with protective clothing and tools,

failed to conduct a risk assessment to examine dangers aggressive animals may pose to claims adjusters, failed to utilize feasible and effective methods of mitigating such risk, and that 'despite the knowledge of the high potential of danger triggered by aggressive animals confronting its claims adjusters, Defendant required Plaintiff to perform her work assignments under these hazardous conditions without taking any steps to minimize the known risks.' The Court finds that these allegations fail to properly allege a claim for intentional infliction of emotional distress. Plaintiff wholly fails to allege that Defendant had intent to injure her. Moreover, the conduct alleged on the part of Defendant does not rise to the level of 'extreme' and 'outrageous.' The Court finds that Plaintiff failed to state a claim Intentional Infliction of Emotional Distress upon which relief can be granted. There is no set of facts, consistent with Plaintiff's complaint, that would entitle Plaintiff to relief under Count I. Therefore, Defendant's Motion to Dismiss is hereby Sustained as to Count I." (Dkt. 23, p. 7).

{¶ 18} Thomas argues that the trial court erred because the facts pleaded in her complaint, coupled with her allegations therein that Progressive's conduct was both extreme and outrageous, are sufficient to withstand a Civ.R. 12(B)(6) challenge, because together they plead the elements of a claim for intentional

infliction of emotional distress.  We do not agree.

{¶ 19} In order to withstand a Civ.R. 12(B)(6) challenge, a complaint must plead the "operative grounds" relating to a claim for relief.  *Mitchell v. Lawson Milk Co.*  A court is bound to assume that the facts pleaded in the complaint are true, but the same does not apply to conclusions of law which the pleader contends are proved by those facts.  The court must evaluate those legal conclusions against the facts pleaded in order to determine whether the standard of proof applicable to a particular claim can be satisfied at trial.  The court may grant a motion to dismiss a claim pursuant to Civ.R. 12(B)(6) when the facts concerned fail to provide that support, but only when it appears "beyond doubt . . . that the plaintiff can prove no set of facts warranting relief."  *State ex rel. Crabtree.*

{¶ 20} We agree with the trial court that Thomas's complaint fails to plead conduct on the part of Progressive in not training or equipping its claims adjustors in dealing with aggressive animals that rises to the level of conduct "so outrageous in character, or so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Yeager.*  The trial court did not err when it dismissed Thomas's claim for intentional infliction of emotional distress, pursuant to Civ.R. 12(B)(6).

<u>Negligent Infliction of Emotional Distress and Negligence</u>

{¶ 21} The trial court correctly held that these two claims for bodily injury are subject to the two-year statute of limitations in R.C. 2305.10. The court then granted Progressive's Civ.R. 12(B)(6) motion and dismissed the two claims on a finding that they are barred by R.C. 2305.10 because the action on those claims was brought more than two years after the claims accrued.

{¶ 22} The incident involving the two pit bull dogs occurred on September 13, 2007. Thomas's causes of action on her two negligence claims then accrued. Thomas filed her complaint on August 31, 2010, more than two years later. Absent a circumstance that tolled the two-year statue of limitations for a sufficient period of time, Thomas's negligence claims are barred pursuant to R.C. 2305.10.

{¶ 23} Thomas argues, as she did in the trial court, that the two-year statute was tolled pursuant to R.C. 2305.16. That section provides:

{¶ 24} "Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the

disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.

{¶ 25} "After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought."

{¶ 26} The trial court rejected Thomas's reliance on R.C. 2305.16 stating: "Because Plaintiff's claims alleged that she *became* mentally ill or unstable as a *result* of Defendant's actions or non-actions, it is axiomatic that she was not mentally unsound at the time the incident occurred.  Therefore, she is not entitled to the protection of R.C. 2305.16."  (Dkt. 23, p. 8)

{¶ 27} Thomas relied on an affidavit of George A. Kraus, a licensed psychologist, who stated that he first saw Thomas on December 8, 2009, and thereafter diagnosed a PTSD condition "triggered by a dog attack in the summer of 2007 while on a service call for her then employer, Progressive Insurance."  Dr. Kraus opined that Thomas was suffering from "moderate to serious deficits

in social and occupational functioning," and that from the date of her encounter with the two pit bulls, Thomas "was so seriously incapacitated that she was incapable of adequately looking out for her own best interests in a court of law."  Dr. Kraus further opined that Thomas's limitations in that respect ended on or about August 19, 2010.

{¶ 28} R.C. 2305.16 tolls the statues of limitations to which it applies in two alternative circumstances when the plaintiff experiences the condition of an unsound mind.  If the plaintiff becomes of unsound mind **after** the cause of action accrues, and the plaintiff is adjudicated incompetent and/or confined in an institution or hospital, the statute of limitations is tolled for "the time during which the person is of unsound mind and so adjudicated or confined."  If the plaintiff is of unsound mind "at the time the cause of action accrues," the limitations period is tolled from that date and does not resume until "after the disability is removed."  (Emphasis supplied).

{¶ 29} It is undisputed that Thomas's causes of action for negligent infliction of emotional distress and negligence accrued on September 13, 2007, when she was attacked by the two dogs. Thomas was not adjudicated incompetent or confined because of a mental illness.  Thomas argues that she is entitled to tolling pursuant to R.C. 2305.16 because her PTSD condition occurred

simultaneously with the attack, and therefore she was of unsound mind "at the time" the cause of action accrued. On that basis, and relying on Dr. Kraus's affidavit statement that Thomas's PTSD condition resolved on or about August 19, 2010, the action Thomas commenced on August 31, 2010 would be timely filed for purposes of R.C. 2305.16.

{¶ 30} R.C. 1.02(C) provides: "'Of unsound mind' includes all forms of mental retardation or derangement." Courts have held that such conditions, when they occur simultaneously with accrual of the cause of action concerned, may be found to have existed "at the time the cause of action accrues" for purposes of R.C. 2305.16. *Bowman v. Lemon* (1926), 115 Ohio St.326; *Almanza v. Kohlhorst* (1992), 85 Ohio App.3d 135. It is the plaintiff's burden at trial to prove that the condition from which he or she suffered was "some species of mental deficiency or derangement [that caused him] to be unable to look into his affairs, properly consult with counsel, prepare and present his case and assert and protect his rights in a court of justice." *Lemon*, at paragraph three of the syllabus. The mere fact that such disabilities existed is insufficient to prove that R.C. 2305.16 applies, however. The plaintiff must also show that the condition causing those disabilities rendered him was a condition "of unsound mind," and that the condition of unsound mind occurred simultaneously with

the accrual of his cause of action.

{¶ 31} In *Bowman v. Lemon*, the victim of an assault claimed that he was entitled to tolling of the statue of limitations because the assault rendered him "of unsound mind." In addition to the testimony of people who knew him that the plaintiff's behavior was inconsistent and erratic, the plaintiff presented the testimony of two physicians. One physician opined that "the plaintiff was not good for at least two years; that for probably a year he suffered from hallucinations; that the witness would not put any faith or credit in the imaginings of the plaintiff." *Id.*, at 330. The other physician opined "that hemiplegia and aphasia resulted from the injury sustained by the plaintiff; that the same were due to an injury to the speech center of the brain; that he could not call an object by its right name." *Id.* The Supreme Court held that "[o]n the whole record, . . . we cannot say that there is no evidence entitling the plaintiff to go to the jury upon this issue of unsoundness of mind." *Id.*, at 332.

{¶ 32} In *Almanza v. Kohlhorst* (1992), 85 Ohio App.3d 135, a plaintiff who had been severely injured in an auto accident failed to timely file her complaint. She relied on the tolling provisions of R.C. 2305.16. The evidence showed that the plaintiff suffered a severe closed head injury that left her comatose for approximately three months and hospitalized for seven months. The plaintiff's

treating physician testified that her head injury "resulted in mental, physical, and emotional defects and those defects caused [the plaintiff] to be 'unable to care for herself and to properly look into her business affairs for at least three years subsequent to the accident." *Id.*, at 138. The Third District Court of Appeals, relying on *Bowman v. Lemon*, held that the trial court erred when it granted a summary judgment against the plaintiff on her claim that she was of unsound mind for purposes of R.C. 2305.16.

{¶ 33} In *Fisher v. Ohio University* (1992), 63 Ohio St.3d 484, the plaintiff, a student, broke his neck while diving into a river during a college-sponsored outing and suffered a spinal cord injury that resulted in a permanent state of paralysis. He commenced an action for personal injuries after the statute of limitations had run. The plaintiff invoked the tolling provisions of R.C. 2305.16, claiming that emotional distress from his paralysis and medication he was prescribed prevented him from understanding his legal rights. The Supreme Court rejected that argument, stating:

{¶ 34} "Construed most favorably for Fisher's position, emotional distress is far from the required condition of mental retardation or derangement. A 'mentally retarded person' is defined by R.C. 5123.01(K) as 'a person having significantly subaverage general intellectual functioning existing concurrently with

deficiencies in adaptive behavior, manifested during the developmental period.' Although not defined in the Revised Code, 'derangement' has been equated with insanity. Webster's Third New International Dictionary (1986) 607. Fisher also stated in his answers to interrogatories that he was never diagnosed as being of unsound mind. A nebulous assertion of emotional distress does not create an issue of fact concerning unsound mind." *Id.*, at 488-489.

{¶ 35} In *Fisher*, the plaintiff relied on the alternative circumstance in R.C. 2305.16 concerning a condition of unsound mind that occurs after the cause of action accrues. The necessary condition of unsound mind is the same in both instances, however. In the present case, Thomas's PTSD condition is more than a nebulous assertion of emotional distress; it was diagnosed by Dr. Kraus. Nevertheless, nothing in Dr. Kraus's affidavit suggests that Thomas's PTSD rose to the level of mental retardation or derangement required by R.C. 1.02(C) and the holding in *Fisher.* A condition "of unsound mind" implies a much more profound disturbance of mental faculties than the "moderate to serious deficits in social and occupational functioning" which Dr. Kraus opined Thomas experienced. We note that PTSD has been held to be insufficient to satisfy the "of unsound mind" requirement in R.C. 2305.16. *Livingston v. Diocese of Cleveland* (1998), 126 Ohio

App.3d 299, 313.

{¶ 36} As a final matter, we do not endorse the procedure that was followed here. The statute of limitations bar is an affirmative defense, Civ.R. 8(C), and is therefore not raised by a motion to dismiss under Civ.R. 12(B).[1] *State ex rel. Freeman v. Morris.* Plaintiff failed to object to Defendant's Civ.R. 12(B)(6) motion on that basis, and instead filed an affidavit contra the motion. That submission presented an issue of fact not resolved by the pleadings. In that instance, Civ.R. 12(B) requires the court to convert the motion to a motion for summary judgment pursuant to Civ.R. 56. The court failed to do that, and Plaintiff made no objection. Neither does Plaintiff complain of the matter on appeal. Therefore, we have decided the error assigned on the limited record before us.

{¶ 37} The assignment of error is overruled. The judgment of the trial court will be affirmed.

FAIN, J., And DONOVAN, J., concur.

---

[1]A statute of limitations defense may be raised by a Civ.R. 12(C) motion for a judgment on the pleadings, which is directed to all the pleadings, including the answer the defendant has filed setting out a statute of limitations affirmative defense as required by Civ.R. 8(C).

**Copies mailed to:**

**Richard Hempfling, Esq.**
**Timothy L. Zix, Esq.**
**Jennifer Hann Harrison, Esq.**
**Timothy G. Pepper, Esq.**
**Hon. Dennis J. Adkins**